IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ROBERT RILEY,                          *

     Plaintiff,                       *

vs.                                    *
                          CASE NO. 4:12-CV-38 (CDL)

COLUMBUS CONSOLIDTAED            *
GOVERNMENT and RON HAMLETT,
                                 *

     Defendants.                      *
_____        *

O R D E R

Plaintiff Robert Riley ("Riley") works for Defendant Columbus Consolidated Government ("Columbus") as a senior traffic engineering technician. In 2010, Riley applied for a promotion to traffic engineer. Columbus's human resources department deemed Riley qualified for the traffic engineer job, and Riley interviewed for the job but was not selected for the position by his supervisor, Defendant Ron Hamlett ("Hamlett"). In response to that decision, Riley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination. When the traffic engineer position came open again in late 2011, Riley applied for it, but Hamlett and his supervisor, Donna Newman ("Newman"), declined to interview Riley for it, and the position remained open. The traffic engineer position was posted again in 2012,

and Riley applied for it.  Riley was not interviewed for the position, and the position remains open.

Riley contends that he was not selected for the traffic engineer position because of his race and age.  He brought race discrimination claims against Columbus pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment.  He also brought race discrimination claims against Columbus and Hamlett pursuant to 42 U.S.C. § 1981 ("§ 1981").[1] In addition to his race discrimination claims, Riley brought an age discrimination claim against Columbus regarding the 2010 decision pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634.[2]  Riley also contends Columbus and Hamlett violated Title VII and § 1981 by retaliating against him for complaining of racial discrimination

---

[1] In his brief in response to Defendants' summary judgment motion, Riley asserts that "Hamlett is sued under Section 1981 for racial discrimination and retaliation."  Pl.'s Opp'n Br. in Resp. to Defs.' Mot. for Summ. J. 17, ECF No. 24.  Riley does not state that his claims against Hamlett are Equal Protection claims brought pursuant to § 1983.  Therefore, the Court finds that Riley is not asserting an Equal Protection claim against Hamlett.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

[2] Riley's age discrimination claim only relates to the first promotion denial, which occurred in 2010.  Compl. ¶ 40, ECF No. 1; Pl.'s Opp'n Br. in Resp. to Defs.' Mot. for Summ. J. 15 (focusing exclusively on 2010 promotion denial to establish prima facie case of age discrimination).

when they denied him a promotion to the traffic engineer position in 2011 and 2012.

In their 255 enumerated fact statements, Defendants attempt to establish as a matter of law that Riley is not qualified for the traffic engineer job.  This voluminous recitation of the facts, including Hamlett's current opinion that Riley is not qualified for the traffic engineer job, carefully omits that Columbus's human resources department classified Riley as "most qualified" for the job and that Riley's applicant evaluation score in 2010 was ten points higher than the score Hamlett set as the baseline for a qualified traffic engineer candidate. From this evidence, a reasonable jury could conclude that Riley was qualified for the traffic engineer job.  Therefore, the Court finds that genuine fact disputes remain with regard to Riley's Title VII race discrimination claims against Columbus arising out of the 2011 and 2012 decisions.  Accordingly, Defendants' summary judgment motion (ECF No. 22) is denied as to those claims.

However, Defendants' summary judgment motion is granted as to Riley's other claims.  No genuine fact disputes exist as to Riley's Title VII and ADEA claims arising out of the 2010 promotion decision or Riley's retaliation claims, and Defendants are entitled to summary judgment on those claims.  Riley's § 1981 and Equal Protection claims against Columbus fail because

it is undisputed that Newman and Hamlett were not the final
policymakers for Columbus with regard to the 2011 and 2012
decisions not to promote Riley.  Finally, Hamlett is entitled to
qualified immunity on the § 1981 claims against him, so he is
entitled to summary judgment.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  In determining whether a *genuine* dispute of
*material* fact exists to defeat a motion for summary judgment,
the evidence is viewed in the light most favorable to the party
opposing summary judgment, drawing all justifiable inferences in
the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant
or necessary to the outcome of the suit.  *Id.* at 248.  A factual
dispute is *genuine* if the evidence would allow a reasonable jury
to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Riley, the record
reveals the following.

Riley is a black male, and he is fifty-eight years old.  He
works for Columbus as a senior traffic engineering technician.
Riley has a diploma in Electronic Technology from Columbus

4

Technical College, an associate's degree in engineering from
Chattahoochee Valley Community College, and a bachelor's degree
in mathematics from Columbus State University.  Riley began
working for Columbus as a traffic engineering technician in
1984.  He later became a senior traffic engineering technician.
As a senior traffic engineering technician, Riley's duties
include issuing driveway and outdoor café permits, reviewing
subdivision design plans and detour plans, and preparing
ordinance resolutions.

Ron Hamlett is the traffic engineering division manager for
Columbus.  He is Riley's immediate supervisor.  Hamlett reports
to Donna Newman, who is Columbus's director of engineering.
Newman reports to Deputy City Manager David Arrington
("Arrington").  The traffic engineering division is responsible
for roadway maintenance, traffic signs, pavement markings,
traffic signals, and roadway lighting.

In early 2010, Columbus posted the traffic engineer
position, and Riley applied for it.  The Human Resources
Department determined that five applicants met the minimum
qualifications for the position and found that Riley was
qualified for the position; the Human Resources report lists
Riley's status as "Most Qualified."  Pl.'s Resp. to Def.'s Mot.
for Summ. J. Ex. A, HR Report re R. Riley 1, ECF No. 24-1.
Newman and Hamlett selected three individuals to interview for

the position: Riley, Tommy Wright, and Jeremy Hart.  At the time, Riley was fifty-five.  It is undisputed that both Wright and Hart are white males who were in their early thirties at the time of the interviews.

Hamlett selected Wright for the traffic engineer position, and Wright began that job on March 22, 2010.  Wright has a bachelor of science in civil engineering from the University of Alabama.  Newman Dep. Ex. 2, Wright Resume, ECF No. 18 at 174. Wright had approximately eight years of experience as a traffic engineer.  Wright Dep. 24:23-25:11, ECF No. 19.  Wright scored a 98 on the Applicant Evaluation form, which scored candidates based on education, work experience, proficiency in the basic job requirements, and knowledge of civil engineering computer programs, the Federal Manual on Uniform Traffic Control Devices, and traffic signal operation and timing.  Newman Dep. Ex. 4, Wright Applicant Evaluation, ECF No. 18 at 180-81.  Riley scored a 90 on the Applicant Evaluation form.  Newman Dep. Ex. 6, Riley Applicant Evaluation, ECF No. 18 at 184-85.  According to Hamlett, a person who scored an 80 on the Applicant Evaluation form would be "[a]t least" minimally qualified for the traffic engineer position as it currently exists.  Hamlett Dep. 29:15-25, ECF No. 17.  Though Riley scored higher than Wright in terms of work experience, he scored lower than Wright in all of the substantive areas.  *Compare* Wright Applicant Evaluation *with*

Riley Applicant Evaluation.  After Wright received the traffic engineer job, Riley filed a charge of discrimination with the EEOC regarding the denied promotion, and the EEOC received it on October 20, 2010.

Wright resigned from the traffic engineer position in September 2011.  Columbus posted the position in December 2011, and Riley applied for the job.  Columbus's Human Resources Department again deemed Riley qualified for the job and gave his application to Newman and Hamlett for consideration.  Newman and Hamlett, however, elected not to conduct interviews or hire a traffic engineer, and they withdrew the job posting.  They contend that the applicants, including Riley, are not qualified for the position because they do not have sufficient experience with traffic signal design, operation, and maintenance.  Hamlett Dep. 35:2-12.  In early January 2012, Riley approached Hamlett to ask the status of the traffic engineer position, and Hamlett replied that he had received four applications but all of the applicants were unqualified.  The position remained unfilled.

Columbus posted the traffic engineer position again in March 2012, and Riley applied for the job in December 2012. Riley was not interviewed or selected for the position, and the position remains open.

Columbus employees may appeal certain employment decisions to the Personnel Review Board, but it is undisputed that a

promotion denial cannot be appealed to the Personnel Review Board.   Under Columbus's Fair Treatment Policy, however, employees may appeal a range of personnel actions, including "demotion, suspension, fines, dismissal, alleged discrimination, or unfair treatment."   Riley Dep. Ex. 13, Affirmative Action Policy – Fair Treatment, ECF No. 16-1 at 40.   If an employee makes a fair treatment report, then the Human Resources Department investigates the report.   Though the Human Resources Department does not have authority to overrule a department director's employment decisions, a fair treatment report may be escalated to the Deputy City Manager or the City Manager. Hollowell Dep. 23:19-25.   Both the Deputy City Manager and the City Manager have the authority to override a department director's employment decisions.   *Id.*   Riley admits that he did not file a fair treatment report with Columbus regarding the promotion decisions at issue in this action.   Riley Dep. 104:14-17, ECF No. 16.

DISCUSSION

All of Riley's discrimination claims are based on the promotion denials that occurred in 2010, 2011, and 2012.   Riley also contends that he was retaliated against in 2011 and 2012 for making a charge of discrimination to the EEOC.

Riley does not point to any direct evidence of discrimination or retaliation.   Therefore, his claims are

8

subject to the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam). His Title VII, § 1981, and Equal Protection claims are all "subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Riley's ADEA claims are also subject to the *McDonnell Douglas* framework. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

Under the *McDonnell Douglas* framework, Riley must establish a prima facie case. *Vessels*, 408 F.3d at 767. If he does so, then Columbus may articulate a legitimate non-discriminatory reason for its employment decisions. *Id.* If Columbus meets its burden, then Riley must establish that the proffered reason was merely pretext for discrimination. *Id.*

## I.   2010 Promotion Decision

Riley contends that Columbus and Hamlett discriminated against him because of his race and age in 2010, when Wright was selected for the traffic engineer position instead of Riley. To establish a prima facie case of discrimination based on failure to promote, Riley must show (1) he "belonged to a protected class;" (2) he "was qualified for and applied for a position;" (3) "despite qualifications, [he] was rejected;" and (4) "the

position was filled with an individual outside the protected class." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 n.2 (11th Cir. 2007) (per curiam). It is undisputed that Riley belonged to a protected class, that he applied for the traffic engineer position, that he was rejected, and that the position was filled with an individual outside Riley's protected class. Columbus contends that Riley was not qualified for the traffic engineer job, but there is evidence that Columbus's human resources department classified Riley as "most qualified" for the job and that Riley's applicant evaluation score was ten points higher than the score Hamlett set as the baseline for a qualified traffic engineer candidate. Accordingly, the Court concludes that Riley has made out a prima facie case for his 2010 failure to promote claim.

Columbus contends that even if Riley was qualified for the traffic engineer position, Wright was better qualified. This reason is a legitimate nondiscriminatory reason for the decision to select Wright instead of Riley, so Riley must establish that Columbus's articulated reason is pretext for discrimination. He may do so "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Columbus's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id.* at 1348 (internal quotation marks omitted). "In the context of a

promotion, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race [and/or age]." *Id.* (first alteration in original) (internal quotation marks omitted).  In addition, Riley must show that the disparities between Wright's qualifications and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Wright over Riley.  *Id.* (internal quotation marks omitted).

Riley attempts to prove pretext by claiming that he was more qualified for the traffic engineer position than Wright was.  Riley contends that he was equally qualified with Wright in terms of education and that he was more qualified than Wright with regard to experience.  Both Riley and Wright hold four-year college degrees, but Wright has a civil engineering degree, while Riley's degree is in mathematics.  It is not implausible that a candidate with an engineering degree would be considered more desirable for an engineering position than a candidate with a mathematics degree.  With regard to experience, Riley had worked as a traffic engineering technician for more than twenty-five years, but Wright had actually held a traffic engineer job for approximately eight years.  It is not implausible that a

candidate with nearly a decade of work experience in a position comparable to the position being filled would be more desirable than a candidate who only had work experience in a related but lower role.  For these reasons, the Court concludes that Riley has not established that his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Wright over Riley.  *Id.* (internal quotation marks omitted).  Therefore, Columbus and Hamlett are entitled to summary judgment with regard to all of Riley's claims arising out of the 2010 promotion decision.

## II. 2011 and 2012 Promotion Decisions

Riley asserts that Columbus and Hamlett discriminated against him based on his race in 2011 and 2012 by denying him a promotion to the traffic engineer job.  Riley also contends that Columbus and Hamlett denied the promotion in retaliation for Riley's 2010 EEOC Charge.

### A.   Retaliation Claims

The Court is not satisfied that Riley has established a prima facie case of retaliation.  To establish a prima facie case of retaliation, Riley must show that: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action."  *Brown v. Ala.*

*Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (internal quotation marks omitted).

It is undisputed that Riley engaged in statutorily protected activity when he filed the EEOC charge in October of 2010. It is also undisputed that the denial of a promotion is an adverse employment action for purposes of a retaliation claim. What is lacking is evidence of a causal connection between the two. Temporal proximity alone is not sufficient to establish an inference of retaliation in this case; to establish an inference of retaliation, "the temporal relationship between the protected activity and the adverse employment action must be very close." *Id.* at 1182 (internal quotation marks omitted). Here, there was more than a year between the October 2010 EEOC Charge and first post-Charge promotion denial. The Eleventh Circuit has held that a three-month interval between protected activity and an adverse employment action is too long to establish causation based on temporal proximity. *Id.* "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (internal quotation marks omitted).

Riley contends that the Court should ignore the year-long gap, comparing his case to *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1566 (11th Cir. 1995). This case is not,

13

as Riley suggests, a case like *Beckwith*, where "the sequence of events culminating in [the adverse employment action] suggests a very deliberate strategy on the part of" the employer to complete the adverse employment action. *Id.* Because Riley has not established a causal connection between his protected activity and the 2011 and 2012 denied promotions, his retaliation claims fail.[3]

B.   Discrimination Claims

Although Riley has not established a prima facie case of retaliation with regard to the 2011 and 2012 promotion decisions, he has established a prima facie case of race discrimination: he belongs to a protected class; he applied for and was qualified for the traffic engineer position; he was rejected; and after Riley was rejected, the position remained open and Columbus continued to seek applicants. *See Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998) (explaining prima facie case established in *McDonnell Douglas*).

Defendants contend that Riley was not considered for the traffic engineer position in 2011 or 2012 because Riley was not qualified for the traffic engineer job.  Therefore, Riley must

---

[3]  To prevail on a Title VII retaliation claim, a plaintiff "must establish that his or her protected activity was a *but-for cause* of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, No. 12-484, 2013 WL 3155234 at *16 (U.S. June 24, 2013) (emphasis added).  Given that Riley presented no evidence of a causal connection between his protected activity and the promotion denials, his retaliation claims fail as a matter of law.

establish that this proffered reason is pretext for discrimination. Defendants offer a litany of reasons why Hamlett and Newman now believe that Riley was not qualified for the traffic engineer job, but each of these proffered reasons ignores the evidence that, in 2010, Riley was deemed qualified for the position and even scored ten points higher on his applicant evaluation than the minimum score Hamlett set as the baseline for a qualified traffic engineer candidate. Based on this evidence, a reasonable jury could conclude that Riley was qualified for the traffic engineer job. Therefore, a reasonable jury could conclude that Defendants' proffered reason—Riley was not qualified for the job—is unworthy of credence.

Defendants also contend that, in addition to the traffic engineer duties that existed when Riley applied for the job in 2010, the traffic engineer role has since evolved and will now include the additional responsibility of running a new Traffic Coordination Center ("TCC")—a job for which they contend Riley is not qualified. But, it is undisputed that the TCC is not complete and that Hamlett and Newman do not know when it will be operational. Furthermore, there is evidence that the traffic engineer will *not* run the TCC because the engineering department is seeking to have Columbus create a new position to run the TCC once the center is opened. Hamlett Dep. 78:19-25, ECF No. 17, Newman Dep. 13:1-15, ECF No. 18. Based on these conflicts in

the evidence, a reasonable jury could conclude that Defendants fabricated the TCC qualification and that the traffic engineer will not have responsibility for running the TCC. Therefore, a reasonable jury could conclude that Defendants' proffered reason regarding the TCC is unworthy of credence.

Based on the genuine fact disputes regarding whether Riley is qualified for the traffic engineer position, the Court is satisfied that Riley has met his burden of pointing to sufficient evidence of pretext with regard to the 2011 and 2012 promotion denials. Accordingly, the Court denies summary judgment as to Riley's race discrimination claims based on those decisions.

## III. Municipal Liability

Columbus asserts that even if Riley's race discrimination claim based on the 2011 and 2012 promotion denials may proceed under Title VII, they may not proceed under § 1981 or the Equal Protection Clause. Riley's § 1981 and Equal Protection claims against Columbus are brought through 42 U.S.C. § 1983. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Government entities "may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). "Instead, municipalities may only be held liable for the execution of a governmental policy or custom." *Id.*

"'[M]unicipal liability may be imposed for a single decision by municipal *policymakers* under appropriate circumstances.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). "Final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Id.* at 1401.

It is not seriously disputed that Newman and Hamlett made the decision not to promote Riley in 2011 and 2012. Columbus contends, however, that Newman and Hamlett were not final policymakers with regard to the decision because Riley could have appealed the decisions pursuant to the Fair Treatment Policy. Under the Fair Treatment Policy, employees "may appeal personnel actions relating to demotion, suspension, fines, dismissal, alleged discrimination, or unfair treatment." Riley Dep. Ex. 13, Affirmative Action Policy – Fair Treatment, ECF No. 16-1 at 40. It is undisputed that the Deputy City Manager and the City Manager have the authority to override an employment decision by a department director such as Newman. Riley argues that the Fair Treatment Policy does not cover Newman and Hamlett's decision not to promote him, but he points to no evidence in support of this assertion. The Fair Treatment Policy provides for an appeal of "alleged discrimination" and "unfair treatment," and the appeal may be escalated to the

17

Deputy City Manager and the City Manager, both of whom have the power to override any employment decision by a department director such as Newman. The Court is satisfied that this appeal process constitutes "meaningful administrative review."

Riley knew that Newman and Hamlett deemed him unqualified for the traffic engineer position when he reapplied for it in 2011 and that they declined to interview him for the position in 2011 and 2012; if they took this action for an unlawful reason, then that would certainly qualify as "alleged discrimination" or "unfair treatment."  It is undisputed that the Deputy City Manager and the City Manager had the power to override Newman and Hamlett's employment decisions.  For this reason, Newman and Hamlett were not final policymakers for Columbus with regard to employment decisions in the engineering department.  Therefore, the Court grants the summary judgment motion as to Riley's § 1981 and Equal Protection claims against Columbus.

## IV.  Qualified Immunity

Hamlett contends that he is entitled to qualified immunity on the § 1981 race discrimination claim against him.[4]  "Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any clearly established statutory or

---

[4] Riley's § 1981 claim against Hamlett, a state actor, must be brought pursuant to § 1983.  *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)

constitutional rights of which a reasonable person would have known." *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (internal quotation marks omitted). "To evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's misconduct." *Id.* at 838-39. "This two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Id.* at 839.

Here, it is undisputed that it is unlawful to discriminate against a job candidate based on his race. However, it is not clear that Hamlett's conduct with regard to the 2011 and 2012 promotion denials is actionable. There is no evidence that Hamlett was the final authority within the engineering department on the 2011 and 2012 decisions not to promote Riley. Rather, the evidence is that while Hamlett had "authority to review employment applications for positions within the Traffic Engineering Division," "assist[ed]" in interviewing the candidates, and "ma[de] recommendations as to who should be selected," Newman Aff. ¶ 10, ECF No. 22-2, Newman actively participated in the 2011 decision not to promote Riley. Thus, Hamlett's conduct with regard to the 2011 decision consisted of concurring with his supervisor regarding a proposed employment action for which the supervisor was ultimately responsible and

which Hamlett himself had no independent power to stop. The Court cannot find that such an act is "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg*, 511 F.3d at 838 (internal quotation marks omitted). Moreover, the Court is skeptical that the present record demonstrates a sufficient causal connection between Hamlett's conduct and the promotion denials for Hamlett to be held individually liable. Accordingly, Hamlett is entitled to qualified immunity on Riley's § 1981 claim.

CONCLUSION

For the reasons discussed above, Hamlett is entitled to summary judgment on all of Riley's claims against him. Columbus is entitled to summary judgment on all of Riley's claims against it, except the Title VII race discrimination claims regarding the 2011 and 2012 promotion denials. Those claims remain pending.

IT IS SO ORDERED, this 25th day of June, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE